THE PEOPLE OF THE STATE OF NEW YORK EX REL. ANNA MARIA DEAN v. THE BOARD OF ASSESSORS OF THE CITY OF NEW YORK, DEFENDANTS.

*Assessors of New York city — acting under chapter 697, Laws of 1867, act judicially — the owners are entitled to notice — measure of damages.*

Chapter 697 of the Laws of 1867, providing for the laying out of the entire district, between Fifty-ninth and One Hundred and Fifty-fifth streets, west of Eighth avenue, in the city of New York, directs that all damages to lands or buildings by reason of closing a street or altering its grade shall be ascertained and paid in the manner specified in sections 3 and 4 of chapter 52, Laws of 1852.

The act of 1852 makes it the duty of the assessors of said city " to estimate the loss and damage" which each owner will sustain by a change of grade, and to " make a just and equitable award of the amount of such loss or damage" to the owner, but does not direct the manner in which this shall be done.

*Held*, that the board of assessors, proceeding under the act of 1867, occupied the position of commissioners appointed to assess the value of land taken under the power of eminent domain.

That their functions were judicial, and as such, contemplated the giving to the parties interested notice of a hearing, and an opportunity to be heard before an award was made.

That it was error for the board of assessors first to make an award, the owner not having been heard, and thereafter to give her notice of it in order that she might object to it if so advised.

**408** PEOPLE ex rel. DEAN *v.* BOARD OF ASSESSORS.

FIRST DEPARTMENT, FEBRUARY TERM, 1891.

That it was also error for such assessors in making their award to consider what benefit the owner had received from the opening of new streets, their powers being confined to the damages sustained by closing the old road.

That it was also error for such assessors to deduct the value of the land which the owner obtained by the closing of the road; that, on the other hand, the assessors might consider the benefit resulting to the owner from the fact that her land was relieved from the public easement which had existed thereon before the old road was closed.

The road in question was theoretically closed when the assessors filed a certain map; it was not, in fact, closed until many years later.

*Held,* that the owner was not entitled to an award as of the date of the filing of the map, but that the value of the land should be determined as of the time when the assessors made their report.

WRIT OF CERTIORARI granted, upon the petition of Anna Maria Dean, on the 16th day of October, 1889, to review the acts of defendants, done under chapter 697 of the Laws of 1867, in the matter of ascertaining or estimating the loss and damage to her property as shown by their award made September 17, 1889.

The proceeding sought to be reviewed related to the appraisement of the loss and damage sustained by the relator by the closing of the Kingsbridge road.

*J. A. Deering,* for the relator.

*G. L. Sterling,* for the City of New York.

VAN BRUNT, P. J.:

In view of the conclusion at which we have arrived, it will not be necessary to discuss in detail many of the questions presented by the counsel to the court. It would seem, from an examination of the authority conferred upon the board of assessors, that there has been an entire misapprehension, by the board, of the nature of their duties and of the rights of claimants to damages.

It seems to have been assumed that the powers and duties conferred upon them in reference to passing upon claims for damages, because of the closing of streets, were similar to those strictly pertaining to their office, viz., the making of estimate and assessment for paving, regulating and repairing streets, relaying pavements, constructing sewers, etc. A very brief examination of the law under which the respondents were carrying on these proceedings will show that such a view was entirely erroneous. By the act of

1867 (chap. 697), which provided for the allowance of compensation for the closing of streets, it was provided that all damage by reason of the closing of a street should be ascertained and paid in the manner specified in sections 3 and 4 of the act entitled "An act to make permanent the grades of the streets and avenues of the city of New York," passed March 4, 1852 (chap. 59). The act of 1852 provided that "in all cases where the grade of any street or avenue now established * * * shall be changed or altered, in whole or in part, it shall be the duty of the assessors appointed to estimate and assess the expenses of conforming to such change of grade, and regulating the street or avenue in accordance therewith (namely, the board of assessors) to estimate the loss and damage which each owner of land fronting on such street or avenue will sustain by reason of such change to such lands, or to any improvements thereon; and make a just and equitable *award* of the amount of such loss or damage to the owner or owners of such lands," etc. The act contains no provision as to the method in which they are to proceed in ascertaining this damage and making this award. It will be at once seen that under these circumstances the board of assessors occupied the position of commissioners to ascertain the damage done by a public improvement, and their proceeding seems to be of the same character as that of commissioners appointed to assess the value of land taken under the power of eminent domain.

This view of the duties of this board, under these circumstances, is especially recognized in the case of the *People ex rel. Heiser* v. *Gilon et al.* (121 N. Y., 551), where, under a special act in reference to the change of grade of the Eighth avenue, the board of assessors proceeded to award compensation to owners fronting upon the avenue. In that case the authority conferred upon the board of assessors, being the same as is conferred by the legislation above referred to, the court held that the duties which the board was required to perform were essentially judicial in their nature, and that these judicial functions could not be properly performed in contemplation of the law, without giving the parties interested some notice of the time and place of the hearing and an opportunity to be heard. And it is plainly intimated in that case that this time and place of hearing and opportunity to be heard shall be before an award shall be completed, for the court say that the notice in that

**410** PEOPLE ex rel. DEAN *v.* BOARD OF ASSESSORS.

First Department, February Term, 1891.

case was defective because it called for objections to the assessment made, not for proof or arguments in support of a claim for damages. In other words, the party affected is entitled to notice to present his claim, and not to notice to present his objections to an award already determined upon. In this the proceeding is entirely different from those which the board pursue under the statute in the levying of an assessment. The board levies the assessment in the latter case and then notifies the parties affected by the assessment to come in and present their objections, and they pass upon the objections. But in a case of the character of that at bar this board is bound to notify claimants to present their claims. The claimant is entitled to present his proofs, and after hearing the proofs the board makes its award. It follows from this authority conferred upon the board of assessors, that the board cannot take proof except upon due notice to the claimants.

It is one of the essential features of a judicial proceeding, that the suitor shall have notice of all proceedings which may affect his rights, and that he cannot be barred by an adjudication rendered upon evidence taken without his knowledge, and which he may have had no opportunity to refute.

It appears, from the return of the board of assessors in this case, that they, in the absence of the claimants, took evidence, and that there was proof given in the case which is not in the return, of which the claimants had no notice, and of the character of which they are not even now informed. In assuming that they had the right to base their award upon any information that they could get from any source whatever, or in any manner which may seem proper in their own eyes, we think, as already stated, that the board erred; they attempting to assimilate this proceeding to that which the statute prescribes in the case of the levying of an assessment. It follows, therefore, that the whole proceedings have been governed by an erroneous theory.

It is to be observed that the board is to make a just and equitable award of the amount of damage, not to levy an assessment for damages. It may well be claimed that they occupied the position of arbitrators selected under the act to determine, as between the State and the owner, what will be a just amount to pay for the damages inflicted upon the owner.

There are one or two other points which it seems to be necessary to consider in order that, upon a new proceeding, the board should not fall into some errors, in reference to the method of ascertaining the damage, which seem to have pervaded the present proceeding.

It appears from the return that, in determining the amount of loss resulting to the relator by the closing of the road, they have considered the benefits arising from the opening of the new streets, and this they have deducted from the amount of the loss.    This would appear to be compelling the owner to pay twice for the same benefit.    In the proceedings for the opening of the new streets the owners were assessed for benefit, and now in the proceeding for the closing of the old road they are compelled to pay another assessment for benefit.    There cannot be two benefits arising from the opening of the same street.

In this proceeding, therefore, the board of assessors had no right to consider the question as to what amount of benefit the owner had received from the opening of the new streets.    The question which they were to consider was the damage which the owner would sustain by the closing of the old road.    The question of access by the new streets had, of course, some relation to that question, because, if no access to the property could be gained by the new streets, greater damage would necessarily be sustained by the closing of the old road than would occur if access could be obtained by the new street.    But whatever benefit may have resulted to the owner could not be considered, except so far as the existence of the new streets giving new access to the property would affect the amount of damage sustained by the owner by the closing of the old means of access.

It follows that the board, in taking into consideration the benefits conferred by the opening of the new streets, erred, and that they should have made their award independent of that fact.

There is also an objection taken to the fact that the board of assessors deducted the value of the land which the owner obtained possession of by the closing of the street.    This was clearly incorrect.    The abutting owner was the owner of that land all the time. She did not acquire title thereto by the closing of the street.    But it was subject to a public easement, which undoubtedly affected its value, and the board had the right to consider what benefit it was to the owner to have that portion of her land which was situated

within the road relieved from the easement which existed over it prior to the closing of the old road. This, necessarily, is a circumstance to be considered in determining the amount in which the abutting owner is damaged by reason of the closing of the street.

The only other question is the point which is made that the assessors erred in not making the compensation as of the date when the road became closed upon the map, although not closed, in fact, until many years later. We do not think, although the road may not have had any legal existence after the filing of the map, no proceeding whatever having been taken in reference to the matter, that the relator was necessarily entitled to have his damages assessed as of the time of the filing of the map, as though the street had then been actually closed.

It is a familiar principle, in reference to the assessment of damages for the taking of land for street opening, that the value, as of the time of the commissioners making the report, is the true rule to be followed; and this proceeding is analogous in that respect. It would seem, therefore, that the same rule of damages would apply. And this, of course, disposes of the question of interest. Even if the foregoing rule should be wrong, it does not seem to be possible that interest could run until the amount of the award had been determined; because up to that time the damages were unliquidated and there was no power upon the part of the city to pay an unascertained obligation.

We do not think it necessary to discuss further the questions which were presented by the elaborate points of counsel. The proceedings should be reversed and sent back to the board of assessors in order that they may proceed in accordance with the views herein expressed, without costs.

BARRETT and BARTLETT, JJ., concurred.

Proceedings reversed and sent back to board of assessors as expressed in opinion, without costs.