(34 Misc. Rep. 729.)

## In re CLOSING KINGSBRIDGE ROAD.

(Supreme Court, Special Term, New York County. May, 1901.)

1. EMINENT DOMAIN—ASSESSMENT BY COMMISSIONERS—REVIEW.

Though the determination of commissioners of estimate and assessment on questions of benefit and damages are of more weight than the verdict of a jury on questions of fact, where their awards, when appointed under Laws 1892, c. 129, § 1, to determine the compensation to be paid for property taken by the closing of a road in the city, show that different principles have governed the commissioners in awarding damages to property similarly situated with that of objector, and to the property of such objector, the report will be sent back for revision.

2. SAME—BENEFITS.

Commissioners of estimate and assessment, appointed under Laws 1892, c. 129, § 1, to determine compensation for property taken by the closing of a road in the city of New York, cannot consider the benefits derived by an owner from the opening of new streets, nor deduct the value of the land which he obtains by the closing of the road.

. In the matter of the closing of Kingsbridge road between 137th and 149th streets. Motion to confirm report of commissioners of estimates and assessment. Denied.

John Whalen, Corp. Counsel, and John P. Dunn, for confirmation of report.

John Alex Beall, for E. S. Whitman.

John C. Shaw, for Mary G. Pinckney.

James A. Deering, for William G. Ward.

LAWRENCE, J. This motion is made to confirm the report of the commissioners of estimate and assessment heretofore appointed herein. By chapter 129 of the Laws of 1892, the provisions of the New York City consolidation act relative to the closing of streets and avenues are amended by the insertion of the following provision in section 1009:

"In all cases where any map has been or shall be made and filed as required by this act, or otherwise closing or intending to close any street, avenue, road, lane, alley, public square or place, or any part thereof theretofore in use or laid out or established in said city, and proceedings have not been had or completed to ascertain and determine the compensation which ought justly to be made to the owners or persons interested in the property taken or injuriously affected thereby, it shall be the duty of the counsel to the corporation to take proceedings in the supreme court for the first judicial department, in the name of the mayor, aldermen and commonalty of said city, for the appointment of commissioners of estimate and assessment, to ascertain and determine the compensation which should justly be made to the respective owners, lessees, parties and persons respectively entitled unto and interested in the said lands, tenements, hereditaments and premises, or rights or interests therein taken, affected or damaged by such closing."

The commissioners in this proceeding were appointed pursuant to the provisions of that act, and objection is now made by Mary G. Pinckney, the owner of property known on the damage map as "Parcel No. 1," that the report should not be confirmed, on the ground that the award is an inadequate compensation for the loss and damage which she has suffered by reason of the closing of said road, and also on the ground that, by a comparison of the awards of the commissioners for other property similarly situated, it is apparent that the same principle has not been acted upon by the commissioners in making the awards. The proof shows that Miss Pinckney was the owner, at the time of the closing, of all the property on the east side of the road from 137th street on the south to 141st street on the north. She owned no property on the west side of the Kingsbridge road, and the damage that she has sustained is that which is suffered by her property lying on the easterly side of the road. It is conceded that the old Kingsbridge road was an old highway in existence long prior to the filing of the city's map of 1811 under the act of 1807. It is also conceded that the legislature, by chapter 697 of the Laws of 1867, authorized the commissioners of the Central Park to re-lay out all the territory west of Eighth avenue, and from 59th street on the south to 155th street on the north. By the provisions of the act, all the streets, roads, etc., which were not shown on the map filed by the commissioners, were to be closed, and damages arising out of said closing

were to be assessed by the board of assessors. By the sections of the consolidation act above referred to, the procedure for assessing damages was changed, and the supreme court was authorized to appoint commissioners to estimate damages arising from the closing of roads of this character. The Kingsbridge road did not appear upon the map filed by the Central Park commissioners on March 11, 1868. By chapter 367 of the Laws of 1866, the commissioners were authorized to lay out and establish what was designated as "Avenue St. Nicholas." The map showing the laying out of this road was filed by the commissioners under this act, and St. Nicholas avenue appeared upon the map of the commissioners filed March, 1868, under the Laws of 1867. A new road was also shown upon the map of the commissioners filed in 1868, between St. Nicholas avenue and Eighth avenue, known as "Edgecombe Avenue." These avenues appear upon the commissioners' map in this proceeding. Both of these avenues have been opened under legal proceedings, and the property of Miss Pinckney, I understand it to be conceded, was assessed for benefit for said openings. The cross streets known as 138th, 139th, and 140th streets, from Edgecombe avenue to St. Nicholas avenue, were closed by the filing of the map of 1868. After examining the testimony taken in this case and the maps submitted, it seems to me that the objection urged by Miss Pinckney's counsel is well taken. He is correct in his position, I think, that her legal frontage on Kingsbridge road was taken away, and the prospective frontage of her property on 138th, 139th, and 140th streets was destroyed, because those streets, between the proposed Edgecombe avenue and St. Nicholas avenue, were closed, and all her property became substantially interior land, with no prospective cross streets ever to be opened. A comparison between the award made to Miss Pinckney for damages done by the closing of the road, to wit, $500, with that allowed for parcel No. 6 on the said map, $1,200, shows, I think, clearly, that the commissioners could not have been guided by the same principle in making the two awards. Miss Pinckney owns four blocks of ground, as before stated, lying between 137th and 141st streets, and her frontage upon the Kingsbridge road was taken away all along the line of her property for the space of those four blocks. She was given a new frontage on the block between 138th and 139th streets by the opening of St. Nicholas avenue, but she got this frontage only by paying an assessment for it: On the block between 137th and 138th streets she was left with a strip of land lying in the bed of Kingsbridge road between her property and the new line of St. Nicholas avenue. The situation of parcel No. 6, just referred to, is very much the same as that of the Pinckney property, and yet the damage which is allowed to her is much less than one-half of that which is allowed to the owner of parcel No. 6, Mr. West. For parcel 5, which is the property between the middle line of 147th street and the middle line of 148th street, the commissioners have awarded the sum of $7,500. That property consists of a series of lots on the easterly side of the Kingsbridge road, and the situation is very much the same as Miss Pinckney's property, between 140th and 141st

streets, one block in extent, her property lying on the easterly side
of the Kingsbridge road. I understand it to be contended by the
counsel to the corporation that the damages which were awarded
to Miss Pinckney were confined to a point midway between 139th
street and 141st street, and that the amount realized upon a sale of
the property between 140th and 141st streets was such as to jus-
tify the commissioners in making a very slight award. That con-
tention does not answer the objection which is made that the award
made cannot be reconciled on principle with the awards made for the
Monteith and the Dean properties between 146th and 148th streets.
It is contended by the counsel to the corporation that the situation
is entirely different, because the Monteith property gained no new
frontage whatever, and that the Dean property, situated between
146th and 147th streets, was almost in precisely the same condition.
An examination of the map and the testimony, I think, will, however,
show that no such difference existed between the situation of those
properties and that of Miss Pinckney as to justify the great differ-
ence in the awards which have been made. For the Monteith prop-
erty an award of $7,500 has been made, while the award to Miss
Pinckney is only one-fifteenth of that amount. The award made for
the Dean property is $5,300. It cannot be contended that this dis-
crepancy can be accounted for by the fact that the Pinckney prop-
erty had a new front given to it by the laying out of Edgecombe
avenue, for the reason that it was held in the case of People v.
Board of Assessors, 59 Hun, 407, 408, 13 N. Y. Supp. 404, that it was
error for such assessors in making their award to consider what
benefit the owner of it receives from the opening of new streets,
their powers being confined to the damages sustained by closing
the old road, and that it was also error for such assessors to de-
duct the value of the land which the owner obtained by the closing
of the road. That proceeding, it will be observed, was taken by
Anna Maria Dean, the owner of the property described as No. 4 on
the damage map, and, under the provisions of the consolidation act
to which I have just referred, the commissioners in this proceeding
were vested with the same powers as those which had been previous-
ly conferred upon the assessors by chapter 697 of the Laws of 1867.
I am well aware of the principle, so often asserted by the courts, and
so often followed by me, that the determinations of commissioners in
proceedings of this character on questions of benefit and damage are
to be regarded as of more weight than even the verdict of a jury upon
a question of fact, and that it is only where differences in the awards
granted and the amounts assessed upon different owners are so
great as to justify the court in finding that an error in principle
has been committed by the commissioners that the court should
send the report back for revision and correction. I think that no
one can read the testimony in this case without being satisfied that
the difference in the damages awarded to Miss Pinckney for the
closing of the Kingsbridge road, as compared with the damages al-
lowed to the other parties whose property is involved in the proceed-
ing, is so great that the commissioners have made an error in the
principle upon which they have proceeded, and that, therefore, it is

the duty of the court to send the case back to the commissioners for revision and correction, in order that the award made to Miss Pinckney should be upon the same basis as the awards which were given for damage Nos. 5 and 6.

Ordered accordingly.