THE PEOPLE ex rel. FREDERICK S. HEISER, Appellant, *v.* EDWARD GILON et al., Respondents.

When a permanent official body created by statute is clothed with power and charged with the duty to do certain acts, without being limited as to time, it is an existing authority, capable of performing the duty at any time if a former determination is reversed or set aside.

In such a case the courts have power, and it is their duty to review the determination when called upon, although the individuals who made it have ceased to be officers, and the record of their proceedings has passed into the custody of some other authority.

Under the provisions of the act of 1872, " in relation to the improvement of Eighth avenue in the city of New York" (Chap. 729, Laws of 1872), which authorizes and requires the board of assessors to make and file a statement and award of the amount of damages sustained by the owners

of buildings fronting on said avenue by reason of the improvement, the duties the board are required to perform in this respect are judicial in their nature, and could not properly be performed without giving to persons interested notice of the time and place of hearing and an opportunity to be heard.

Where, by the return to a writ of certiorari, it appeared that the board gave notice of an assessment upon the property benefited, but none as to a hearing in regard to the damages, and that, without a hearing of a property owner, it made and filed a certificate of award as to his damages, *held*, that the award made was illegal.

The board and the city comptroller were made parties; the latter made a return of the proceedings filed with him. *Held*, that while the board itself could not make a return of their determination, as it no longer had possession of the paper which evidenced its official action, this did not affect the power of the court to review such action when it could get the record before it, and as this was accomplished by the return of the comptroller, and as the board is a permanent official body, capable of performing the duty imposed upon it at any time in case its former decision was set aside, the court had power, and it was its duty to review and vacate that decision.

The difference pointed out in the rule governing such a case, and one where town assessors have completed their roll and delivered it over to the supervisor of the town, and so, their powers and functions are ended.

(Argued June 2, 1890; decided June 17, 1890.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 2, 1888, which dismissed a writ of certiorari brought by the relator as executor of Christina E. Smith, deceased, to review the proceedings of the board of assessors of the city of New York in relation to an award for damages sustained by reason of the change of grade of Eighth avenue in the city of New York, and which affirmed the proceedings of said board.

The facts, so far as material, are stated in the opinion.

*Edward Perkins* for appellant. The writ of certiorari is the proper remedy. (Code of Civ. Pro. § 2140; *Heiser* v. *Mayor, etc.,* 104 N. Y. 74; *Swift* v. *City of Poughkeepsie,* 37 id. 511; *People* v. *Bd. Assrs.,* 40 id. 154.) The statement

1890.]      People ex rel. Heiser *v.* Gilon et al.      553

Opinion of the Court, per O'Brien, J.

of award in this case of $5,000 and the assessment for benefit of $5,434.87, should each be vacated, with costs. (*People* v. *Suprs.*, 51 N. Y. 442.)

*D. J. Dean* for respondents. No writ of certiorari will lie to the board of assessors, because the assesment-roll had been completed and passed from their jurisdiction before the writ was issued. (*People ex rel.* v. *Bd. Assrs.*, 16 Hun, 408; *People ex rel.* v. *Reddy*, 43 Barb. 539; *People* v. *Fredenrich*, 48 id. 173; *People* v. *Comrs.*, 43 id. 494; *People ex rel.* v. *Tompkins*, 40 Hun, 220; *People ex rel.* v. *Boyd*, 34 id. 266; *People* v. *Common Council*, 38 id. 5; *People ex rel.* v. *Delaney*, 49 N. Y. 655.) The return shows the proceedings of the board of assessors were regular and sufficient, and there is in the petition of the relator, the writ, or the affidavit, no allegation of irregularity, excess of power or defect in procedure. (Laws of 1872, chap. 729; *People ex rel.* v. *Trustees*, *etc.*, 48 N. Y. 390; *People* v. *Steele*, 56 id. 664; *People* v. *Schafer*, 6 Wkly. Dig. 18; *People* v. *Commrs. of Taxes*, 43 Barb. 494.) No error in procedure is shown. The return shows the publication in the "City Record" of the notice required by the statute of 1841, chapter 171, now contained in section 871 of the Consolidated Act. (*People* v. *Comrs.*, 39. N. Y. 517; *People ex rel.* v. *Police Comrs.*, 6 Hun, 229; *People* v. *Mayor, etc.*, 2 Wkly. Dig. 375; *People* v. *W. S. Bank*, 39 Hun, 525.)

O'Brien, J. The claim represented by the relator in this proceeding has passed through almost every conceivable stage of litigation. Beginning in 1873, with the presentation by the relator's testator of a claim for damages to real estate to the board of assessors of the city of New York, it was followed by an order awarding a mandamus against the assessors, to compel them to act on it, which was resisted by them to a final decision by this court. Then, after the board had acted, a writ of certiorari was procured, to review what was claimed

to be an erroneous or irregular decision, which resulted in the defeat of the relator, on the ground that the action of the board being completed and the assessment filed in the finance department, no power existed in the court to award any judgment against the respondents. (*People ex rel.* v. *Bd. Assrs.*, 16 Hun, 407.)

The relator then brought an action, based upon an allegation of fraud and misconduct on the part of the assessors, to recover damages of the city caused, as he claimed, by such wrong or misconduct, in which the complaint was dismissed, and that judgment against him was finally affirmed in this court. (*Heiser* v. *Mayor, etc.*, 104 N. Y. 68.)

Going back then to the point where the writ of certiorari was dismissed by the General Term, he procured the judgment against him in that proceeding to be opened, succeeded through various motions in bringing in new parties, and in 1888, a reargument of the certiorari was had, upon an amended record, with the same result as before, namely, an affirmance of the action of the respondents, and a dismissal of the writ upon the ground that the assessment-roll having been filed and the duties of the assessors performed, and the proceedings beyond their control, no relief could be granted by virtue of the writ. The case now appears for the third time in this court, upon an appeal from this order of the General Term.

Christina E. Smith, who died August 4, 1874, after filing the claim referred to with the board of assessors, leaving a will in which the relator was named as her executor, was the owner of certain real estate fronting on Eighth avenue in the city of New York, which street had been, at various times between 1864 and 1872, graded and regulated in pursuance of legislative enactment. It would seem that no method of compensating property owners, on this avenue, for the damages to their property, in consequence of the grading and regulating of the street, had been provided by the acts under which the work was done, or by any general law then in force. This led to the passage of chapter 729 of the Laws

of 1872, which is the legal authority upon which the relator's claim rests and which reads as follows :

" SECTION 1. The Board of Assessors of the City of New York are hereby authorized and directed to assess upon the property intended to be benefited by the regulating, grading and improving of Eighth avenue, between Fifty-ninth street and One Hundred and Twenty-second street, the amount of damage or injury which each owner of a building, or buildings, erected on land fronting on said avenue or street has, or will sustain or suffer, by reason of such changes of grades and plan of improvement of said avenue, heretofore authorized or directed to be made by the Legislature, or any officer or board in the City of New York, and shall make and file in the Finance Department of said city a just and equitable statement and award of the amount of such damage, loss or injury to the owner or owners of such building or buildings, on lands fronting on such street or avenue, and opposite thereto, and affected by such change of grade, and the amount of such award shall be included in the expenses of regulating, grading and improving said avenue, and with such expense for regulating, grading and improving said avenue shall be assessed as provided in and by the 175th section of the act of April 9th, 1813, entitled 'An Act to reduce the several laws relating to the City of New York into one act.'

" SEC. 2. The Comptroller of the City of New York is hereby authorized and directed to issue assessment bonds of said city to pay the amount of such loss or damage so assessed by said Board of Assessors, together with such an amount as may be necessary to pay the expenses or costs that have been or may be hereafter necessary for the regulating, grading and improving of said avenue."

It will be seen that the statute authorized and required the board of assessors to do two things. First, they were to ascertain and determine the amount of damage, loss or injury, which the property owners had sustained, by reason of the grading and regulating of the street, and, secondly, they were required to assess this sum, together with the expense of doing

the work, upon the property benefited. After the damages to the property owners had been ascertained, then the assessors were to proceed in assessing them upon the property benefited, according to the procedure prescribed in the 175th section of the act of April 9, 1813, now incorporated in the Consolidation Act. (Laws of 1882, chap. 410, § 871.) The statute, however, is silent as to how the assessors were to proceed in ascertaining the damages which the property owners had sustained, and no provision is made for notice to them or for a hearing. The duties which the board was required to perform were essentially judicial in their nature and character. The power and duty to determine the amount of loss or injury, which the owner of real estate had sustained, involved the exercise of judgment and discretion, and the hearing of such proof as the property owners had to offer, and as was pertinent to the inquiry. These judicial functions could not be properly performed, in contemplation of law, without giving to the parties interested in the determination, some notice of the time and place of the hearing and an opportunity to be heard. In the amended return to the writ, the assessors state that they gave notice by advertising in the official journal, on the 29th day of February, 1876, and again on the 30th day of April, 1876, in the following words : " Public notice is hereby given to the owner or owners, occupant or occupants, of all houses and lots, improved or unimproved lands affected thereby, that the following assessments have been completed, and are lodged in the office of the board of assessors for examination by the persons interested, viz.: For, No. 1. Regulating, grading, setting curb, gutter and flagging, of Eighth avenue, from Fifty-ninth to One Hundred and Twenty-second street in three sections. * * * All persons whose interests are affected by the above-named assessments, and who are opposed to the same, or either of them, are requested to present their objections, in writing, to the board of assessors at their office, No. 19 Chatham street, within thirty days from the date of this notice." This paper was signed by the four persons composing the board of assessors, and dated the 29th day of February, 1876. The

description of the assessed district is omitted as immaterial to any question involved in the appeal. It is quite plain that this notice applied to the assessment upon property within a certain district, for benefits in consequence of the improvement, and the expenses of making the same, and not to the damages or loss sustained. All persons who were interested in assessments imposed for benefits, and who desired to have the amount imposed reduced, were notified to file objections in writing within a specified time, but there was no suggestion that property owners who had sustained loss or injury by the grading and regulating of the street could present proofs or be heard. The notice called for objections to an assessment made, not for proofs or argument in support of a claim for damages. We are informed by the return that the board determined the amount of damages that the real estate represented by the relator sustained, when he was not present, at $5,000, and that on the 29th day of March, 1876, they filed the certificate of the award with the comptroller of the city of New York, and that they filed the assessment for expenses and benefits with the board of revision and correction of assessments on the 5th day of May, 1876. It appears further that the certificate awarding $5,000 damages to the relator, signed by the assessors, bears date March 27, 1876, and, consequently, whatever proceedings the board of assessors took for the purpose of determining the amount of the relator's loss were prior to that date. There were two distinct and separate proceedings before the board, the result of which is expressed in two papers, namely, the certificate of award as to the damages, and the assessment list as to the expenses and benefits. Notice was given of the latter by the publication of the advertisement above set forth, but no notice whatever was given of the former unless the conversations had between the counsel for the relator and the members of the board is to be treated as such, and we think it is not. The notice published cannot, as already observed, be treated as covering the relator's claim for damages, or as affording him an opportunity to be heard on that subject; and even if it could, the relator was not given

the thirty days designated in the notice to present his case, as the award was completed as early as March twenty-seventh, and filed March twenty-ninth. It follows that the board, in making the award, failed to observe an essential requirement in all judicial proceedings, namely, notice to the party interested in the determination and an opportunity to him to be heard, and for that reason no regular or legal determination of the loss or injury to the real estate of Mrs. Smith has yet been made. The act of 1872 imposed this duty upon the board of assessors without requiring it to be done within any particular time or by any particular set of assessors. So long as the duty remains unperformed it is competent for the board to act, and the fact that its membership has changed, and is continually changing, does not affect the question. The act of the asssessors of 1876 in filing with the comptroller what purports to be an award of damages, but in fact made without notice to the party interested, and hence, irregular and erroneous, does not satisfy the requirements of the statute. It is true that it has been often decided that when assessors have completed the roll and delivered the same to the supervisors their official powers and functions are ended, and a certiorari then to review their action cannot accomplish anything, and will be dismissed. Such, no doubt, is the well settled rule in such cases, where no change has been made by special statutes. This rule has been very frequently applied to assessors in towns and cities required to make assessments of property for the purposes of general taxation within a specified time and according to the directions of the statute. Of course, when the time has elapsed and the action of the officers has been completed, they have, ordinarily, no further control of the subject. But that is not the case now under consideration. The legislature, in 1872, conferred power and imposed duties upon an official body of a judicial nature, to be performed by the persons then composing the body, or by their successors in office. The power and duty to act remained until the object of the statute was accomplished. If one set of officers refused to act, or acted illegally, that would not relieve their successors from

1890.]     People ex rel. Heiser *v.* Gilon et al.     559

Opinion of the Court, per O'Brien, J.

the duty or abridge their powers. True, that in this case, after a valid or an invalid award of damages was made and filed by the board with the comptroller, they could not make return of their determination upon a writ of certiorari, for the reason that they no longer had possession or custody of the paper that evidenced their official action. It was in the custody of another officer, and until he was made a party to the proceedings, the court could not know what the proceedings were or get the determination properly before it for review. The comptroller had been made a party to the proceeding, and he has made return of the proceedings filed with him and so the record containing the action of the board of assessors in 1876, was before the General Term and is now before this court. The fact that the assessors have made and signed an award and filed it in another office, did deprive them of the means of making a return to the writ, but does not affect the power of the court to review their action, when it can get the record before it, from the officer in whose custody it is. The Code seems to provide for just such a case. " The writ must be directed to the body or officer, whose determination is to be reviewed or to any other person having the custody of the record, or other paper to be certified, or to both if necessary." (Code Civ. Pro. § 2129.)

When the court gets the record before it, and it appears that then, or when the writ issued, there was no officer or body that had jurisdiction over the matter involved in the determination, or that can act, as in the case of town or city assessors under the general law, after the time within which they can make or review assessments has expired, the office of the writ cannot be attained and it is properly quashed or dismissed. But when, as in this case, a permanent official body is clothed with power and charged with the duty to act, without being limited as to time, it is an existing authority capable of performing the duty at any time in case a former determination is reversed or set aside. In such case, the courts have the power and it is their duty to review the determination when

560      People ex rel. Heiser *v.* Gilon et al.      [June,

Opinion of the Court, per O'Brien, J.

called upon, though the individuals who made it have ceased to be officers, and the record of their proceedings has passed into the custody of some other authority. (*People* v. *Suprs., etc.*, 51 N. Y. 442.) The claim which the attorney for the relator's testator presented to the board in December, 1873, for injury to her real estate, amounted according to the written statement to $104,239.90, and she was allowed $5,000, and assessed for benefits $5,453.87. The claim may have been extravagant or exaggerated, and the award of damages and assessment for benefits just, though the relator contends that the damages given were out of all proportion to the injury sustained. The only question that we can consider is the regularity of the proceedings of the board in making the determination, and as to that, we think that some notice of the time and place of hearing, to enable the property owners to be heard, was necessary in order to make the determination valid and binding on the parties. This the assessors did not give in the proceedings for the determination of the amount of damages sustained. The record shows that conversation took place between the relator's counsel and the assessors, or some of them, in which he expressed a desire to offer proofs and they to hear and receive them, but in consequence of sickness of counsel, no proofs were given and the determination was in fact made solely upon the examination and judgment of the assessors and without the knowledge or consent of the relator. The absence of the property owners at the time the determination was made, or their failure to present proofs, could not, of course, prevent the assessors from acting and making the award, providing they had complied with the forms of judical procedure by the service of notice, proceeding either from themselves or the city, which was interested in that it was liable in the first instance at least for the payment of the award. The only obstacle to prevent the present or some future board of assessors from hearing the relator's claim under the act of 1872 is the record of 1876, which, until reversed or vacated, shows that the duty has once been performed, though in a manner not legally binding upon the parties.

The order of the General Term appealed from should be reversed, and the determination of the board of assessors as to the relator's claim vacated and set aside, with costs to the relator.

All concur.

Order reversed and ordered accordingly.