### GOUGH v. SATTERLEE et al.

(Supreme Court, Appellate Division, Second Department. June 21, 1898.)

1. LLOYDS INSURANCE—LIABILITY OF TRUST FUND IN ATTORNEY'S HANDS.

    A Lloyds policy of fire insurance provided that, in the event of litigation, suit should first be brought against the attorney for full relief, judgment therein to be satisfied from a certain trust fund in the attorney's hands as express trustee, any balance to be the basis of actions against the individual underwriters, who were to be liable only pro rata. There were also provisions relating to apportionment, as among different claims. *Held*, in an action on the policy against the attorney, that the plaintiff was entitled to recover the whole amount of the loss out of the trust fund so far as adequate, without any accounting or apportionment in that respect.

2. SAME—LIABILITY OF ATTORNEY AS TRUSTEE.

    *Held*, further, that the express trust set forth in the policy extended only to the fund in the attorney's hands, and could not, for lack of subject-matter, render the attorney an express trustee, simply to be sued on the obligation of the underwriters, for which he was in no wise to answer either individually or in the fund.

3. COURTS—JURISDICTION BY CONSENT—DECISION.

    The policy also provided that, in case of any subsequent action against the individual underwriters, each agreed to abide the final determination

in the action against the attorney, as fixing his individual responsibility. *Held*, that the parties to the contract could not thus confer jurisdiction on the courts, and require them, in the action against the attorney only, to determine the respective liabilities of the underwriters, such issues not being relevant or necessary in that action.

Appeal from trial term.

Action by Arthur E. Gough against Douglass R. Satterlee and an-other, as attorneys, etc. From a judgment in favor of plaintiff entered on a verdict directed by the court, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George M. Mackellar, for appellants.
Arthur S. Luria, for respondent.

CULLEN, J. This action is brought to recover on a policy of fire insurance issued by the defendants as attorneys in fact for 15 individual underwriters, the defendants being among the underwriters. The policy is of the kind commonly known as a "Lloyds policy," and contains provisions limiting the liability of the underwriters thereon. Each underwriter is liable only for his pro rata share of the loss, and in no event for the default of his associates. His liability is further limited by a provision that it should not exceed on the policy issued, and all policies then or thereafter in force, after the application of the total unexpended premiums, the sum of $5,000; and if, by reason of a fire or fires, several risks insured under policies issued by the underwriters should become payable, then that all policy holders who sustain loss from such fire or fires should be entitled to recover as against each underwriter only that proportion of the adjusted claim on each policy which the total liability of each underwriter should bear to the aggregate of such claims. The policy recites that each of the underwriters has deposited with the attorneys the sum of $1,500, amounting, in the aggregate, to the sum of $22,500, which sum, with all premiums unexpended and undivided, was to be held by the attorneys as a trust fund for the payment of claims under the policy in suit, and under all other policies, and the attorneys were declared to be, with reference to such fund, trustees of an express trust. It was further provided that, in the event of litigation, no action should be brought against the individual underwriters "until after suit shall have been brought against the attorneys for the underwriters, and for the full amount of the loss or claim, or full and complete relief claimed under this policy, and each of the underwriters hereon hereby agrees to abide the final determination of any such action, suit, or proceeding so brought, as fixing his individual responsibility under this policy. Judgment entered in such action, against the said attorneys as such trustees as aforesaid, shall be satisfied out of such trust fund in the hands of said attorneys. If such trust fund shall be insufficient to satisfy such judgment, then the as-sured may begin and maintain actions against the individual underwriters hereon upon their liability under this policy, as hereinbefore expressed and limited, upon their agreement to abide the final de-

termination of any suit brought against the said attorneys as such trustees as aforesaid." In their answer the defendants averred the existence of claims for losses under other policies of insurance issued by the defendants and their associate underwriters of the Lloyds of New York City, and also of claims for rebates for returned premiums on cancellation of policies aggregating more than $100,000, and that a number of the underwriters had paid, as their proportionate share of the losses so issued, large sums of money; that by reason of these facts the plaintiff was not entitled to recover the whole amount of his loss, but only his pro rata share of the whole amount for which the underwriters were answerable under the provisions above recited. On the trial the defendants offered proof to sustain these allegations of their answer. This the court excluded, and the correctness of this ruling of the court is the only question presented on this appeal.

The provisions and limitations of this policy are very complicated, and their meaning obscure and doubtful. As we construe it (and in this construction we follow the trial court), the policy holder is entitled to recover of the attorneys the whole amount of his loss, which, in the language already quoted from the policy, "shall be satisfied out of such trust fund in the hands of said attorneys." Then, if the trust fund is insufficient to satisfy the claim, actions may be maintained against the individual underwriters. That no accounting is to be taken of the trust fund, and of the claims against it, and that no apportionment is to be had, is made plain by the fact that an execution against the underwriters as trustees must first be issued and returned unsatisfied, in whole or part, before an action can be brought against the individual underwriters. The provision as to the issue of an execution is wholly inconsistent with the idea that the action is to be one in equity to administer a trust fund. The real intent of this policy, and the practice contemplated by the parties, was that a common-law action should be brought against the attorneys the same as if those attorneys were an independent corporation which had made the contract of insurance, and then resort be had against the individual underwriters only in case of the inability of the attorneys, or the funds in their hands, to respond to the claims made against them. I do not understand the appellants to controvert this view. Whether the contract of the parties could make this scheme fully operative it is not necessary to consider. It has been held by the appellate divisions of the First and Third departments that, where the attorneys are also underwriters (which is the present case), an action on the policy will lie against them (Leiter v. Beecher, 2 App. Div. 577, 37 N. Y. Supp. 1114; Concentrating Works v. Ackermann, 6 App. Div. 540, 39 N. Y. Supp. 585; Lawrence v. Schaefer, 20 App. Div. 801, 46 N. Y. Supp. 719); though it has also been held by the common pleas that, where the attorneys are not underwriters, the action cannot be maintained (Knorr v. Bates, 14 Misc. Rep. 501, 35 N. Y. Supp. 1060; Farjeon v. Fogg, 16 Misc. Rep. 219, 37 N. Y. Supp. 980). Therefore an objection that the complaint and evidence failed to make out a cause of action would not be well founded, and that is the only objection that can be taken for the first time on appeal. . No question was raised in the trial court as to the

form of the judgment or character of the recovery. Judgment was awarded against the defendants as attorneys for the underwriters for the whole amount of the plaintiff's loss. If the construction of the policy which we have adopted is correct, it follows that the matters set up in the defendants' answer do not operate to restrict the recovery in this action, but only to limit the liability of the underwriters in actions that may hereafter be brought against them.

It is, however, insisted that, as the contract provides for the determination in this action of the respective liabilities of the several underwriters, and as they have agreed that the final determination of the action shall fix their individual responsibilities, it was incumbent on the court to determine the existence and amount of those liabilities. The proposition is substantially this: That the agreement of the parties, and the fact that other persons not parties to the record have stipulated to abide the judgment, renders it the duty of the court to decide issues not relevant to or necessary for the determination of the particular claim or cause of action of the plaintiff against the defendants in suit before it. It is said in Re New York, L. & W. R. Co., 98 N. Y. 447, that "parties by their stipulations may, in many ways, make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional, rights." But this doctrine is not to be construed so broadly as to permit parties to overturn the established system of administration of justice, and set up an independent scheme of their own for that purpose. Doubtless parties under no disability may arbitrate their controversies, but, if they appeal for the determination of those controversies to the courts, they must take the courts with the jurisdiction and powers that the constitution and the law vest in them, and the courts cannot be compelled to assume the functions of arbitrators. Thus, it is an elementary rule that consent cannot confer upon a court jurisdiction of the subject-matter. No stipulation or contract of the parties can authorize a county court to try a suit in ejectment. So, in passing on the effect of a contract to modify judicial procedure, we must see whether the stipulations of the contract relate merely to matters of practice, and to the private rights of the parties, or whether they go to the power and jurisdiction of the court itself. The present action is between the insured and the attorneys for the underwriters. The only subject-matter within the power of the court to adjudicate is the liability of the defendants to the plaintiff. A judgment is limited by the issues in the action. When it goes beyond that, it is not conclusive between the parties. (Campbell v. Consalus, 25 N. Y. 613), and may be wholly void (Clapp v. McCabe, 84 Hun, 379, 32 N. Y. Supp. 425). The issues in an action are the controverted matters of law or fact the determination of which affects, limits, or controls the rights of the parties to the action in the particular subject-matter in litigation. Judgments are enforceable only against the parties or their successors in interest. A court cannot render judgment against persons not before it. A judgment so rendered would be void. Freem. Judgm. § 120a. Nor could the consent of such persons make the judgment operative

against them.   I use the term "operative" in the sense of directly
enforceable by execution or other process, not merely as binding in
other litigations.   If the court cannot completely determine the
controversy before it without the presence of other parties, it must
direct them to be brought in.   Code, § 452.   The underwriters could
stipulate that they would be bound by the judgment in this action,
and so might any other person, pending the litigation, agree, upon
sufficient consideration, to pay any judgment which might be award-
ed to the plaintiff.   Courts sit only to render enforceable judgments;
to command, not to advise.   The appellants rely on the opinion in
Concentrating Works v. Ackermann, supra, where it is said in refer-
ence to these policies:

> "The purpose of the contract is to have all questions between the parties
> settled in one action.   That purpose is clearly commendable.   We have here,
> not one hundred separate policies of insurance, but one policy underwritten by
> one hundred insurers contracting severally, and so contracting in consideration
> of a premium paid to them, it seems, as a body.   Why should not all ques-
> tions between these parties be settled in one action against one of their
> number?"

This language is forcible, but will it stand the test of analysis?
Parties might wish to save the expense even of a single action, and
therefore desire to obtain the opinion of the court on a question in
dispute, and agree to abide by that opinion.   But the action of the
court in such case, unless it was submitted in conformity with
the terms of the Code, would be wholly extrajudicial.   By section
1281 of the Code, if the agreed statement of facts is not sufficient to
enable the court to render a judgment, the submission must be dis-
missed; and we have recently dismissed a submission where the case
involved a question of much importance, on the ground that we were
not able to render an effective judgment.   Clapp v. Guy (Sup.) 52 N. Y.
Supp. 33; People v. Payn, 26 App. Div. 585, 50 N. Y. Supp. 334.   So, in
the recent case of People v. Morton, 50 N. E. 791, the court of appeals
has held that mandamus will not lie against the governor because the
court cannot enforce its mandate.   If the parties to a controversy
cannot require of the court a determination of their dispute, even in
a direct proceeding between themselves, unless they also provide for
the rendition of an operative judgment, a fortiori they cannot re-
quire that such a determination shall be made in a litigation between
other parties.   The question is not whether the agreement in this
case is against public policy; it is much more fundamental.   It is
whether the contract of the parties can place on the court a burden
and duty which is not imposed on it by the law of the land.   Courts
are not universal arbitrators, or composers of all differences in the
community.   They are required by law to decide only such contro-
versies as are brought before them by regular legal proceedings, and
then only the controversies of the parties to the proceedings.   There
is a limited class of cases, such as actions against sureties or guar-
antors, where it is necessary to determine the obligation of the prin-
cipal debtor, though not a party to the action, because that obligation
measures the liability of the defendant.   But I think the contracts
of private individuals can no more authorize, much less require, a
court to make a decision on a question not properly in litigation

before it, than it can require the view of the court on the conduct or probable duration of the present war. In the case of Lawrence v. Schaefer, supra, Judge Spring expresses the opinion that the attorneys for the underwriters may be considered as trustees of an express trust. I do not know how far these Lloyds policies are alike. Where, as in the present case, there is a fund in the hands of the attorney consisting of the original deposit and the accrued premiums, as to such fund the attorney may be considered as the trustee of an express trust. It is on this theory that the judgment for the plaintiff in this action must be upheld. But as to the individual liability of the underwriters beyond the fund, there can be no trust, and therefore no trustee. Judge Story writes (Story, Eq. Jur. § 964):

"A 'trust,' in the most enlarged sense in which that term is used in English jurisprudence, may be defined to be an equitable right, title, or interest in property, real or personal, distinct from the legal ownership thereof. * * * Three things are said to be indispensable to constitute a valid trust—First, sufficient words to raise it; secondly, a definite subject; and, thirdly, a certain or ascertained object."

A subject or corpus of a trust estate is absolutely essential, not merely to the validity of a trust, but to its existence. Courts will supply a trustee; in England, at times, under the cy pres power, they will select beneficiaries; but in no country will they furnish a trust estate. A trust may exist in a contract where one person agrees to pay moneys to another for the benefit of a third. There the corpus of the trust is the chose in action. Again, another person may agree that the principal obligor will perform his obligation; but this person is a guarantor or surety, not a trustee. So, also, there are obligations for which a trustee of property may be sued as such. But how there can be a trustee simply to be sued on the obligation of another, for which he is in no wise to answer, either individually or in property placed in his possession for the purpose, I am at a loss to imagine. I am frank to say that I cannot grasp the conception of such a trust.

I know of but one case where, in this state, an action at law can be brought against a nominal defendant, and that is an action against a joint-stock company or association. This is wholly by virtue of the statute which directs that suits by or against joint-stock companies shall be prosecuted in the name of the president or treasurer for the time being. But, though the defendant in such an action is a nominal one, the judgment in the action is by no means formal or inoperative. On process issued on the judgment against the president or treasurer, the property of the company can be seized and applied to the satisfaction of the claim. But even in such an action no issue as to the individual liability of the associates or members of the company can be litigated. In suits against the associates to enforce their individual liability, the judgment against the company is insufficient to maintain the action. Witherhead v. Allen, *42 N. Y. 562. Of course, the underwriters do not constitute a joint-stock company or association, within the statute. Their liabilities are several, not joint. The judgment appealed from should be affirmed, with costs. All concur.